UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY W. HELLENBERG,<br><br>          Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>          Defendant. | Case No.: 18cv2202 JM (KSC)<br><br>**ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES** |

  Plaintiff Casey W. Hellenberg moves the court to award $73.535.27 in attorneys' fees and costs pursuant to the Song-Beverly Consumer Warranty Act ("the Song-Beverly Act"). (Doc. No. 23-1 ("Mot").) The motion has been briefed and the court finds it suitable for submission without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the below reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**

  On February 11, 2016, Plaintiff purchased a new 2016 Ford F-150 ("the vehicle"). The vehicle experienced engine problems requiring Plaintiff to bring it to a Ford-authorized repair facility multiple times. In January 2017, Plaintiff requested that Ford repurchase or replace the defective vehicle, but Ford declined. On August 17, 2018, Plaintiff filed the instant action in state court, and the action was timely removed to federal court. On November 19, 2019, the parties filed a notice of settlement. (Doc. No. 30.) On December 17, 2019, the court vacated all pending dates related to the action and ordered the parties to file the dismissal papers upon the court's determination of the instant motion.

## II. LEGAL STANDARD

Under the Song-Beverly Act, a prevailing buyer "shall be allowed by the court to recover . . . . costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." CAL. CIV. CODE § 1794(d). The court must determine "whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994). "In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007).

The lodestar method is the prevailing method for calculating attorneys' fees. *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 818-19 (2006); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135 (2001). In calculating the lodestar, the court must "'make an initial determination of the actual time expended; and then . . . . ascertain whether under all the circumstances of the case the amount of the actual time expended and the monetary charge being made for the time expended are reasonable.'" *Robertson*, 144 Cal. App. 4th at 817 (quoting *Nightingale*, 31 Cal. App. 4th at 104). In determining the reasonableness of the lodestar, courts can consider the complexity of the case, procedural demands, the skill exhibited, and the results achieved. *Id*.

The plaintiff bears the burden of demonstrating that the fees sought were allowable, reasonably necessary to the conduct of the litigation, and reasonable in amount. *Karapetian v. Kia Motors Am., Inc.*, 970 F. Supp. 2d 1032, 1036 (C.D. Cal. 2013). If the reasonableness of fees is challenged, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Assoc.*, 163 Cal. App. 4th at 550, 564 (2008). In such cases, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id*. at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("The party

opposing the fee award can be expected to identify the particular charges it considers objectionable"). Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998). The court may also draw on its own experience in determining what constitutes a reasonable rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (holding that "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees").

### III. DISCUSSION

As the prevailing party, Plaintiff is entitled to an award of attorneys' fees, costs, and expenses. Detailed billing records provided by Plaintiff show the $73,535.27 he requests consists of the following: (1) $43,592.50 for 126.3 hours of work by nine attorneys at rates between $250 and $550 per hour; (2) an additional $21,796.25 based on a 0.5 lodestar multiplier; and (3) $8,146.52 in costs and expenses.

#### A. Attorney Rates

Plaintiffs seek $43,592.50 for 126.3 hours of work by nine attorneys at rates between $250 and $550 per hour. The rates and hours for each attorney are as follows:

| Attorney | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Mikhov | Managing Ptnr. | 5.4 | $550 | $2,970 |
| Stephenson-Cheang | | 11 | $375 | $4,125 |
| Morrison | Of Counsel | 38 | $375 | $14,250 |
| Morse | Partner | 8.1 | $350 | $2,835 |
| Hartman | | 16.2 | $350 | $5,670 |
| Rosenweig | Associate | 22.5 | $325 | $7,313 |
| Devabose | Associate | 2 | $275 | $550 |
| Colon | Associate | 4.2 | $275 | $1,155 |
| Kalinowski | Associate | 18.9 | $250 | $4,725 |
| **Total** | | **126.3** | | **$43,592.50** |

"[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Plaintiff bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services

3

by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts may also rely on their own familiarity with the legal market. *Ingram*, 647 F.3d at 928. As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

For several reasons, Plaintiff's attorneys' hourly rates are reasonable. For one, Plaintiff's counsel's firm clearly specializes in Song-Beverly Act claims. As Plaintiff points out, his attorneys have developed templates allowing them to complete certain tasks quickly. For example, Plaintiff's counsel only billed 2.4 hours for drafting the entirety of written discovery (which included 42 requests for admission, 55 requests for production of documents, and 25 form interrogatories). (Doc. No. 23-2 ¶ 11.) Based on their experience, Plaintiff's attorneys also claim that they do not need to spend much time researching, drafting documents from scratch, or identifying the key facts of a particular case. (*Id*. ¶ 100.) Furthermore, Plaintiff's counsel state that their firm has won 68% of the 55 cases it has tried since 2012. (*Id*. ¶ 30.) Additionally, there is no reason to disbelieve Plaintiff's counsel's claim that Song-Beverly Act cases possess as least some complexity because they require an understanding of the full scope of consumer protection laws, the intricacies of automobiles and the lexicon associated with them, and knowledge of manufacturers' and dealerships' repair protocols. (*Id*. ¶ 100.)

Additionally, after conducting discovery, Plaintiff's counsel obtained a favorable result, i.e. a settlement from Ford for $135,000 and an agreement that Plaintiff was the prevailing party. (*Id*. ¶ 18.) The advice Plaintiff received must have played at least a small part in eliciting this considerable increase from Ford's initial offer of $10,888. (*Id*. ¶ 6.)

As Plaintiff notes, the final settlement amount was more than two times what Plaintiff agreed to pay for the vehicle. (Mot. 17.)[1]

Finally, and most importantly, Plaintiff cites numerous cases since 2016 in which state courts have approved the same or similar rates charged by attorneys in Plaintiff's counsel's firm. (*Id.* ¶¶ 52-91.) Plaintiff also cites a survey from 2017 reflecting rates for consumer attorneys in California. (*Id.* ¶ 96). Ford does not challenge the applicability of the cases or the veracity of the survey. Accordingly, Plaintiff has met his burden of showing the reasonableness of his attorneys' hourly rates.

### B. Hours Billed

Plaintiff states that his attorneys spent 126.3 hours working on this case. As support, Plaintiff provides detailed and itemized records showing the time it took to complete each task throughout the litigation. As discussed below, Plaintiff's attorneys charged for 6.5 hours of anticipated work for attending a hearing that was never held. Other than that, all of the other tasks appear reasonably necessary. Over the course of 12 months, counsel for Plaintiff filed a claim in state court, attended an early neutral evaluation conference, exchanged written discovery, designated expert witnesses, met and conferred with opposing counsel, deposed at least one Ford employee, attended Plaintiff's deposition and expert vehicle inspection in Texas, attended a mandatory settlement conference, settled the case, reduced the settlement agreement to writing, and filed the instant motion. This amount of litigation could reasonably occupy 119.8 hours. Furthermore, as noted above, many tasks were likely completed in less time than it would take a firm that did not specialize in this type of case. Although Plaintiff's correspondence, pleadings, motions,

---

[1] Plaintiff also cites rates of $625 and $640 per hour charged by two experienced attorneys practicing in this forum. (Mot. ¶¶ 51(a)-(b).) This provides only minimal support, however, for the reasonableness of Plaintiff's counsel's rates given that no evidence is offered as to what those attorneys charge in this forum for this type of case. Plaintiff's reference to the high fees charged by attorneys practicing outside this forum do not support his position.

5

and discovery papers were admittedly based in large-part on templates, accurately incorporating the relevant facts and procedural posture unique to each case would still require a decent amount of time and attention. Additionally, while Ford generally argues that Plaintiff's counsel's hours are excessive for a routine case, Ford offers no explanation as to why this particular case, or any Song-Beverly Act case, is routine.[2] Instead, Ford takes issue with three specific tasks for which Plaintiff's counsel billed.

### 1. Vehicle Inspection and Plaintiff's Deposition

First, Ford specifically challenges the 29.5 hours expended for Plaintiff's counsel to travel to Texas to attend the vehicle inspection and Ford's deposition of Plaintiff. (Opp. 13.) Ford argues that it only agreed to conduct the deposition and inspection in Texas in order to accommodate Plaintiff. (*Id.*)

Ford is correct to fault Plaintiff for filing the instant action in San Diego, then subsequently objecting to being deposed in San Diego and having his vehicle inspected in San Diego. Understandably, Ford initially objected to conducting the discovery in Texas and stated its intent to move to compel that it be conducted in Southern California. (Doc. 27-6 at 14-15.) Ultimately, however, Ford agreed to conduct the discovery in Texas and only now formally objects to Plaintiff's counsel being paid for doing so. While Ford's willingness to accommodate Plaintiff rather than resort to motions practice is commendable, it does not serve to undermine the reasonableness of Plaintiff's request for attorneys' fees at this final stage in the litigation.[3] It also does not undermine the

---

[2] As noted by Plaintiff, Ford could have provided a potentially persuasive argument by showing that the hours its attorneys spent litigating the same case were far fewer than what Plaintiff's counsel billed, but Ford has not done so.

[3] The record suggests that Plaintiff lived in San Diego at the time he filed his claim, but moved to Texas with the vehicle prior to being deposed or allowing Ford to inspect the vehicle. (Opp. 13; Doc. Nos. 27-1 at 2, 27-5 at 3). Ford states, in what the court will assume is an error, that Plaintiff's request to conduct the discovery in Texas was "justified." (Opp. 13:15.)

reasonableness of Plaintiff's counsel's fees for actually attending the deposition and inspection. Ford was free to negotiate a resolution of this particular dispute at an earlier date, or have the court decide the issue. As discussed below, the only excessive expense related to the discovery conducted in Texas is Plaintiff's expert's first-class airfare. Otherwise, Plaintiff's costs and attorneys' fees related to the Texas discovery appear reasonably necessary.

## 2. Settlement Conferences

Ford also challenges the 29.1 hours of time expended for Plaintiff's counsel to attend two settlement conferences. (Opp.14-15.) Ford generally alleges the hours to attend two settlement conferences is excessive, particularly 15.2 hours spent on the second settlement conference, and Ford also alleges that the entries related to attending the conference are vague. (*Id*. at 15.)[4]

Plaintiff's counsel's entries regarding the time expended for participating in an early neutral evaluation conference (ENE) and mandatory settlement conference (MSC) are not excessive or vague. For the ENE in December 2018, Plaintiff's counsel's firm billed a total of 14.9 hours, which included: (1) 2.8 hours drafting Plaintiff's confidential ENE statement; (2) 10.1 hours preparing for and attending the ENE, including travel from Los Angeles, and drafting results; (3) a total of 1.3 hours communicating with Plaintiff; (4) a total of 0.7 hours filing a notice of appearance of counsel, a notice of submission of the ENE statement, reviewing and signing a joint motion to continue the ENE, and reviewing court orders. (Doc. 23-2 at 37.) For the MSC in August 2019, Plaintiff's counsel's firm billed a total of 16.6 hours, which included: (1) 1.5 hours drafting Plaintiff's confidential MSC statement; (2) 3.1 hours preparing for the following day's MSC; (3) 6.9 hours

---

[4] In reply, Plaintiff emphasizes that after the second settlement conference Ford increased its settlement offer from $68,000 to $135,000. (Reply 8.) Plaintiff's attorneys do not, however, offer any argument supporting their suggestion that their thorough preparation for the second settlement conference caused Ford's change of heart, as opposed to some other cause, such as the magistrate judge's skill in mediating the resolution.

traveling from Los Angeles; (4) 4.1 hours preparing for and attending the MSC and drafting results; and (5) a total 1 hour communicating with Plaintiff and reviewing the MSC results. (*Id*. at 40).

Ford does not explain why any of Plaintiff's cited entries are vague or excessive. Instead, Ford suggests that less time should have been spent preparing for the second settlement conference because Plaintiff had already attended one. This argument is unavailing because the second settlement conference, which was the mandatory settlement conference, would naturally require a review of the discovery and a more involved analysis of the case's value. The costs related to attending the ENE and MSC are reasonable.

### 3. The Instant Motion

Finally, Ford challenges the hours billed for Plaintiff's counsel to file the instant motion. Fees related to the preparation and defense of a motion for attorneys' fees are recoverable. *Ketchum*, 24 Cal. 4th at 1141. Ford argues the 16.2 hours and $5,670 that Plaintiff's counsel seek to be compensated for filing the instant motion is excessive because it accounts for more than 10% of the total hours billed, and because the instant motion and supporting declaration are "nearly identical" to the fee motions Plaintiff's counsel's firm files in "all" its cases. (Opp. 15.) In reply, Plaintiff does not deny that the instant motion is nearly identical to the one it files in all its cases. Rather, Plaintiff's counsel state that "Ford is welcome to show the Court each Reply received from Knight Law in previous lemon law cases that is 'near identical' to this one." (Reply 8.)

Although Ford fails to cite an example of a recent motion filed by Plaintiff's counsel that is nearly identical to the instant one, examples are not hard to find. *See*, *e.g.*, Motion for Attorneys' Fees and Costs, *Hamm v. FCA US LLC*, Case No.: 3:17-cv-0577-AJB-BGS (S.D. Cal. August 19, 2019). Additionally, courts regularly limit fees related to the routine filing of a motion for attorneys' fees. *See Pollard v. FCA US LLC*, Case No. 8:17-cv-00591-JLS-JCG, 2020 WL 57270, at *5 (C.D. Cal. Jan. 3, 2020) (finding that 14.5 hours spent on a motion for attorneys' fees under the Song-Beverly Act was unreasonable given that it was substantially identical to an earlier motion); *Johnson v. FCA US LLC*, No.

17cv0536 AJB (BGS), 2019 WL 3891148, at *3 (S.D. Cal. Aug. 19, 2019) (noting that a motion for attorneys' fees is a "template-driven motion" and reducing a request for $6,252.50 to $2,000).

Although the supporting materials filed in instant motion are lengthy, Plaintiff's attorneys were not required to draft the instant motion from scratch, or conduct much, if any, substantive research. However, Plaintiff's counsel only billed 4.7 hours and $980 for drafting the instant motion, which is a reasonable amount of time to accurately fill in the names of the parties, facts, procedural posture, dates, amounts requested, and other unique information related to the instant case, as well as to gather and organize the voluminous supporting documents, such as receipts. (Doc. No. 23-2 at 41.) Plaintiff also billed an anticipated 5 hours and $1,750 for reviewing Ford's opposition and drafting a reply, (*id.*), which is also reasonable given that replies are less conducive to templates. Plaintiff's counsel were not required, however, to prepare for or attend a hearing on the instant motion, for which they included an anticipated 6.5 hours for a total of $2,275. Accordingly, the court reduces the total award by $2,275.

### C. Multiplier

In determining whether to apply a multiplier, courts should consider: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1131 (internal citation omitted). The purpose of applying a multiplier is to "fix a fee at the fair market value for the particular action." *Id*. "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Id*.; *see also Pollard*, 2020 WL 57270, at *2-3.

Plaintiff requests a 0.2 multiplier based on the risk his attorneys faced by taking the case on a contingency fee basis, as well as 0.3 multiplier based on the delay in payment, for a total of $21,796.25. (Mot. 23.) Plaintiff broadly claims that courts have awarded a

9

18cv2202 JM (KSC)

multiplier to Plaintiff's counsel in multiple cases, but offers no analysis as to the basis for awarding a multiplier in those cases or the applicability of those cases to the instant one. Out of the 40 state court cases cited by Plaintiffs purporting to support the reasonableness of Plaintiff's counsel's total fees, only five of those courts approved the application of a multiplier, and only two of those cases were decided in this forum.  (Doc. No. 23-2 ¶¶ 52-91.)  Recent cases decided by this court have all declined to apply a multiplier. *See Chavez v. Jaguar Land Rover N. Am., LLC*, Case No.: 18-cv-2811 W (JLB), 2020 WL 376209, at *3 (S.D. Cal. Jan. 23, 2020) (rejecting 0.3 multiplier based on the posture and lack of complexity of case); *Hamm*, 2019 WL 3891139, at *4 (rejecting 0.5 multiplier because the case did not involve complexity or novel or difficult questions of law or fact); *Petropoulos v. FCA US LLC*, Case No.: 17-CV-0398 W (KSC), 2019 WL 2289399, at *4 (S.D. Cal. May 29, 2019) ("Plaintiffs were not litigating important constitutional rights here.  Nor were they representing the public interest. . . . They were seeking compensation and statutory penalties for a defective Durango.").

Plaintiff does not argue that his attorneys, who specialize in these types of cases, are entitled to a multiplier based on the novelty or difficulty of the case, or that they took the case to the exclusion of other work.  While Plaintiff's counsel achieved a favorable result, they point to no specific skill they exhibited in litigating this particular case.  Plaintiff's attorneys' expertise in handling this particular type of case is already accounted for in the approval of their relatively high hourly rates.  Plaintiff's counsel also cite no caselaw supporting the application of a multiplier based on the delay in payment incurred as a result of their own choice to take this case on a contingency basis. Although Plaintiff's attorneys fault Ford for not settling sooner, they admit they rejected at least two settlement offers and have a policy of refusing to discuss settlement of attorneys' fees prior to settling their clients' damages. (Doc. No. 23-1 ¶ 21.)  Accordingly, no multiplier to the lodestar amount is warranted.

### D. Costs

Plaintiff submitted a bill of costs for $8,146.52 which includes: (1) $3,293.43 in travel expenses; (2) $2,161.93 for an expert witness; (3) $1,374.95 in deposition costs; (4) $850 for service of process fees; (5) $435 for the complaint filing fee; and (6) $31.21 in messenger service fees. (Doc. No. 22.) Ford filed an opposition to Plaintiff's bill of costs, arguing that $6,555.03 of the costs relate to travel to Texas which should not be allowed because travel costs are not allowed under federal law and Local Rule 54.1. (Doc. No. 25 at 2.) Ford also argues that the travel costs are unreasonable because Ford would never have agreed to conduct the vehicle inspection and Plaintiff's deposition in Texas "had it known [Plaintiff] would later attempt to force Ford to foot the bill for everyone to travel to him." (*Id*.) In particular, Ford challenges the $1,528.30 in first-class airfare for Plaintiff's expert to travel to Texas. (*Id*. at 6.)

The Song-Beverly Act allows for the recovery of "a sum equal to the aggregate amount of costs and expenses." CAL. CIV. CODE § 1794(d). Under federal law, however, costs available to the prevailing party are limited to those listed in 28 U.S.C. § 1920. Fed. R. Civ. P. 54(d); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). District courts have reached different conclusions as to whether the costs and expenses provision in the Song-Beverly Act is procedural or substantive. *See Base v. FCA US LLC*, Case No. 17-cv-01532-JCS, 2020 WL 363006, at *7 (N.D. Cal. Jan. 22, 2020) (finding that "state law governs Plaintiff's request for costs," but listing several cases in the Eastern District finding otherwise); *Johnson*, 2019 WL 3891148, at *4 ("In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases."); *Forouzan v. BMW of N. Am., LLC*, 390 F. Supp. 3d 1184, 1187 (C.D. Cal. 2019) (finding the cost provision to be substantive based on the state legislature's intent); *O'Brien v. FCA US LLC*, No. 17cv4042 JCS, 2019 WL 5295066, at *7 (N.D. Cal. Oct. 18, 2019) (same).

The court agrees that costs and expenses related to travel for a deposition and vehicle inspection in Texas are not limited by Rule 54(d) or by Local Rule 54.1. The costs and

expenses provision in the Song-Beverly Act is substantive for the same reasons as the courts found persuasive in *Base*, *Forouzan*, and *O'Brien*. Additionally, both Rule 54(d) and Local Rule 54.1 are based on an entry of judgment, which has not occurred here. Moreover, courts consistently award travel expenses to prevailing plaintiffs in Song-Beverly Act cases. *See*, *e.g.*, *Aviles v. Subaru of Am., Inc.*, No. 1:18-cv-01544-DAD-SKO, 2020 WL 868842, at *4 (E.D. Cal. Feb. 21, 2020); *Holcomb v. BMW of N. Am., LLC*, Case No.: 18cv475 JM (BGS), 2020 WL 759285, at *8 (S.D. Cal. Feb. 14, 2020); *Rueda v. FCA US LLC*, No. 117CV00968DADJLT, 2020 WL 469333, at *8 (E.D. Cal. Jan. 29, 2020). For the same reasons previously discussed, Ford's decision to go forward with the deposition and vehicle inspection in Texas precludes it from now arguing that it should not have to pay Plaintiff's travel costs. Prior to agreeing to conduct discovery in Texas, Ford should have known that Plaintiff, if he prevailed, would seek to recover all of his counsel's costs, including those related to travel to Texas. Accordingly, Ford's argument that travel costs are prohibited by federal law and Local Rule 54.1 is not persuasive.

There does not appear to be a case, however, and the parties cite none, addressing the reasonableness of first-class travel for expert witnesses in Song-Beverly Act cases. The record supports, and Plaintiff does not dispute, that his expert flew first-class from Los Angeles to Austin for $1528.30. (Doc. No. 22 at 53.) Plaintiff has not attempted to make any showing that his experts' first-class travel was reasonably necessary. Plaintiff does not argue, for example, that all expert witnesses in the relevant market require first-class travel as part of their retention agreements. The court therefore declines to find that first-class travel for Plaintiff's expert was reasonably necessary. Accordingly, the award for Plaintiff's expert airfare to Texas is reduced by $500.

### IV. CONCLUSION

Based on the forgoing, the court decreases Plaintiff's request for $43,592.50 in attorneys' fees by $2,275 based on the excessive hours billed for preparing and attending a hearing that did not occur. The court therefore **GRANTS** Plaintiff's motion for attorneys' fees in the amount of ***$41,317.50***. The court decreases Plaintiff's request for $8,146.52 in

1 | costs and expenses by $500 based on the excessive first-class travel expense for its expert
2 | witness. The court therefore **GRANTS** Plaintiff's motion for costs and expenses in the
3 | amount of *$7,646.52*. The total amount awarded to Plaintiff is *$48,964.02*. Plaintiff's
4 | request for an additional $21,796.25 based on a 0.5 multiplier is **DENIED**. Pursuant to the
5 | court's December 17, 2019 order (Doc. No. 31), the parties shall file dismissal papers
6 | within *14 days* of the filing of this order.

IT IS SO ORDERED.

DATED: April 10, 2020

JEFFREY T. MILLER
United States District Judge